UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERVIN STUBBS, JR., #398621,                    Case No. 2:22-cv-121

                Plaintiff,                    Hon. Jane M. Beckering
                                              U.S. District Judge

   v.

K. PELKY, et al.,

                Defendant.

_____/

## **REPORT AND RECOMMENDATION**

### I.    **Introduction**

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies.  (ECF No. 36.)

Plaintiff — state prisoner Ervin Stubbs, Jr. — filed suit pursuant to 42 U.S.C. § 1983 on June 13, 2022.  In his unverified complaint, Stubbs asserts that in March of 2022, the Michigan Department of Corrections (MDOC) put all but $11.00 of his Economic Impact Payments towards his restitution.  (ECF No. 1, PageID.4.)  Stubbs says that $600.00 of the payment was exempt from collection.  (*Id.*)  In a supplement to his complaint, Stubbs alleged that MDOC staff retaliated against him by flagging a letter he mailed to the Internal Revenue Service.  (ECF No. 8, PageID.95-96.)  Stubbs named the following MDOC employees as defendants: (1) Assistant Deputy Warden (ADW) K. Pelky, (2) Mailroom General Office Assistant (GOA) Pete

Chrisholm, (3) Business Office Supervisor (BOS) R. McCarthy, (4) Assistant Warden (AW) Doug Harson, and (5) Warden Erica Huss.  (ECF No. 1, PageID.2-3.)

This Court issued a screening opinion on October 3, 2022.  There, the Court determined that Stubbs's complaint failed to state a claim against Warden Huss.  (*Id.*, PageID.120-121.)  The Court further determined that Stubbs's complaint and the supplement thereto failed to state a claim of retaliation.  (*Id.*, PageID.121-123.)  However, the Court found that Stubbs's complaint stated a claim regarding the confiscation of the payment Stubbs received pursuant to the Consolidated Appropriations Act of 2021 (CAA).  (*Id.*, PageID.123.)

Defendants now move for summary judgment, asserting that Stubbs did not properly exhaust his administrative remedies.  (ECF No. 36.)  More specifically, Defendants argue that they were not named in the grievance that Stubbs filed with respect to his CAA claim.  (ECF No. 37, PageID.210.)  Instead, Stubbs named one "RUM Viitala."  (*Id.*)  In response, Stubbs contends that Defendants "clearly and knowingly took the funds."  (ECF No. 52, PageID.304-305.)

The undersigned respectfully recommends that the Court grant Defendant's motion for summary judgment based on Stubbs's failure to exhaust his administrative remedies.  Alternatively, the undersigned recommends that the Court dismiss this action in accordance with 28 U.S.C. §§ 1915(e)(2) and 42 U.S.C. § 1997e(c).  In the undersigned's opinion, Stubbs's grievance records and responses to Defendants' motion for summary judgment clarify that Stubbs's claim against Defendants is based on their involvement in the grievance process for grievance <u>MBP-</u>

2

22-03-525-01B.  Because Defendants' conduct occurred *after* the grievance was filed, grievance 22-03-525-01B could not have exhausted Stubbs's claim against Defendants.  Furthermore, mere participation in the grievance process does not establish personal involvement for the sake of claims brought under § 1983.  And Stubbs's official capacity claim against Defendants is barred by sovereign immunity.

## II.    Factual Allegations

Stubbs's factual allegations span less than one page.  Stubbs says that on April 6, 2021, the MDOC issued a JPay message[1] stating: "as a reminder, EIP checks received for the 2nd stimulus payment will be deposited as exempt from collection." (ECF No. 1, PageID.4.)  Stubbs alleges that on March 18, 2022, he received a tax refund representing his combined economic income payments in the amount of $1,848.27.  Despite the JPay message, the MDOC collected all but $11.00 of Stubbs's refund.  (*Id.*)  Stubbs says that he filed grievances to get his $600.00, but that even when he provided Defendants with his refund, proof that it constituted his combined economic payments, and the MDOC communication regarding the exemption, Defendants "refused to acknowledge their own policy."  Stubbs further alleges that the MDOC's policy on the collection of restitution does not allow for the collection of all funds in a prisoner's account.  (*Id.*)

## III.   Legal  Standards

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

---

[1]    JPay is the email system utilized by prisoners in MDOC custody.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005).  The standard for determining whether

4

summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV.    Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof

---

[2]    The Seventh Amendment does not always require courts to submit factual disputes about exhaustion to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). If the factual disputes about exhaustion do not overlap with the merits of the plaintiff's substantive claims, then the court may conduct a bench trial to resolve the exhaustion issue. *Richards v. Perttu*, No. 22-1298, 2024 WL 1172634, at *8 (6th Cir. Mar. 19, 2024). In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Willey*, 789 F.3d at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence.").

"must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).  A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218-19.  In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where

prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the

attempted informal resolution.  *Id.* at ¶¶ Q, W.  The inmate submits the grievance to a designated Grievance Coordinator, who assigns it to a respondent.  *Id.* at ¶ W.  The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ S (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.  MDOC Policy Directive 03.02.130 at ¶¶ U, DD.  The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.  *Id.* at ¶ FF.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.  *Id.* at ¶¶ U, HH.  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.  *Id.*  The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.  *Id.* at ¶ II.

When the grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required.  It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding

non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too.").  However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process.").  An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits.  *See id.* at 325.  We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected

to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

## V.    Analysis

Defendants argue that they were not named in the grievance that Stubbs filed with respect to his CAA claim; Stubbs named only "RUM Viitala" in grievance <u>MBP-22-03-525-01B</u>.    (ECF No. 37, PageID.210.)    As such, Defendants contend that grievance <u>MBP-22-03-525-01B</u> did not serve to exhaust Stubbs's claim against them.

As an initial matter the undersigned does not agree that RUM Viitala was the subject of the grievance, or that RUM Viitala was the only actor named.  The relevant Step I grievance form is shown below:

---

[3]    In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."   *Id*. at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

**RECEIVED**

MICHIGAN DEPARTMENT OF CORRECTIONS

**PRISONER/PAROLEE GRIEVANCE FORM**

MAR 2 1 2022

4835-4247 10/94
CSJ-247A

Grievance Office
Marquette Branch Prison

Date Received at Step I _3/22/2022_   Grievance Identifier: M B P 2 2 0 3 0 0 5 2 5 0 1 1 6 1

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Stubbs Jr., E. S. | # 398624 | 143 | B5-6 | 3/18/22 | 3/21/22 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? _3/18/2022_
If none, explain why. I received an Outside Source Money Receipt, In which $1,848.27 was taken. Which was against policy. & spoke to RUM Viitala, and sent a kite to Prisoner Accounting. To resolve this violation of M.D.O.C. Policy.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. M.D.O.C.- PRISONER FUNDS POLICY" - 04.02.105 States! The 2nd EIP Stimulus paymen will be deposited and exempt from collection. On 3/18/2022, I received an Outside Source Money Receipt for: $1,848.27, And all but, $11.08 was collected. When per M.D.O.C policy-04.02.105. Only $1,248.08 is to be collected for any debts/restitutions. The 2nd EIP stimulus payment in the amount of $600.00, is exempt from any and all forms of collection. As Stated in the Prisoner Funds policy-04.02.105. To resolve this issue, I ask that the 2nd EIP Stimulus payment, the amount of: $589.00 Be reimbursed immediately. Because taking this money is a violation of policy. And to _Stubbs Jr., E. S._ _Grievant's Signature_ refuse to return the money, is indeed -THEFT!

RESPONSE (Grievant Interviewed? ☐ Yes ☒ No   If No, give explanation. If resolved, explain resolution.)

See attached CSJ 247S, and Daily transaction summary, and photocopied IRS tax refund check.

| Respondent's Signature | Date 05/23/22 | Working Title GOA | Reviewer's Signature B McCarthy | Date 3/23/22 |
|---|---|---|---|---|
| Respondent's Name (Print) Porte A Cambeau | | | Reviewer's Name (Print) B McCarthy | Working Title F.B.M. |

(ECF No. 37-2, PageID.224; ECF No. 1-1, PageID.14.) Stubbs averred that he spoke to RUM Viitala in an attempt to resolve the issue, but his grievance did not name Viitala as the actor responsible for the wrongful collection of his economic impact payments. And Stubbs also alleged that he sent a communication to "prisoner accounting."

Furthermore, the responses to Stubbs's grievance, shown below, do not indicate that the MDOC understood Stubbs's complaint to be against RUM Viitala:

MICHIGAN DEPARTMENT OF CORRECTIONS

CSJ-247S 3/18/2019

### STEP I GRIEVANCE RESPONSE SUPPLEMENTAL FORM
(Use if space on the CSJ-247A is insufficient for a full response by stating on the CSJ-247A "See attached CSJ-247S")

| Prisoner Last Name: | Prisoner #: | Lock/Location: | Grievance #: |
|---|---|---|---|
| Stubbs | 398621 | B/6 | MBP-22-03-00-52501B |

| Prisoner Interviewed: | YES ☐ | NO ☐ | If "NO", Reason: | See Decision Summary for Reason |
|---|---|---|---|---|
| Extension Granted: | YES ☐ | NO ☐ | If "YES", Enter End Date: | Click or tap to enter a date. |

**COMPLAINT SUMMARY:**
Grievant is stating that he received an EIP payment and it was exempt from debt collections.

The business office took debt payments and he would like the funds returned to his account.

**INVESTIGATION SUMMARY:**
A review of Grievants account was conducted.

On 3/18/22 Grievant received a tax refund totaling $1,848.21. Out of that amount, $1,837.21 was taken for Court Ordered Obligations. See account statement attached.

The check received was not an EIP payment. It was a tax refund. See attached.

Per PD 04.02.105 Prisoner Funds, Section W- 'All new funds received by a prisoner shall be used to satisfy his/her dets as outlined in this policy...' Item 1 goes on to state that funds shall be taken as long as prisoner is not left with less than $11 to spend for personal use.

Grievant was left with $11.00 and spent it on JPAY Kiosk Request..

**APPLICABLE POLICY, PROCEDURE, ETC.:**
PD 04.02.105 Prisoner Funds
PD 04.02.107 Collection of Victim Restitition/ Court- Ordered Payments

**DECISION SUMMARY:**
Tax Refunds are considered new funds and debt was removed correctly and per policy.

| RESPONDENT NAME: | Pete Chisholm | TITLE: | Mailroom GOA |
|---|---|---|---|
| RESPONDENT SIGNATURE: | [signature] | DATE: | 3/23/2022 |
| REVIEWER NAME: | R. McCarthy | TITLE: | 3/23/2022 |
| REVIEWER SIGNATURE: | [signature] R. McCarthy | DATE: | Click or tap to enter a date. |

**STEP II — Response**

<table>
<tr><td colspan="3"></td><td>Date Received by<br>Step II Respondent:</td></tr>
</table>

A review of your Step II appeal has been completed. I have also reviewed your Step I grievance and the response. Your issues regarding moneys removed by accounting have been appropriately addressed in the Step I response. No information has been presented or found that would support your claim that staff violated Department Policy. You received a tax refund in which court and or facility debt may be deducted. Any additional issues will not be addressed during the Step II appeal in accordance with PD-03.02.130 Prisoner Parolee Grievances. This grievance is denied.

| Doug Trevino P/ ~~Erica~~ Huss, Warden | | 4-6-22 | Date Returned to Grievant: |
|---|---|---|---|
| Respondent's Name (Print) | Respondent's Signature | Date | |

To Prisoner:         Stubbs         #:  398621

Current Facility:     MBP

Grievance Identifier:   MBP-22-03-0525-01B

Step III Received:     4/20/2022

Your Step III appeal has been reviewed and considered by the Grievance Section of the Office of Legal Affairs in accordance with PD 03.02.130, "Prisoner/Parolee Grievances". Upon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered.

**THE STEP III APPEAL IS DENIED.**

THIS DECISION CANNOT BE APPEALED WITHIN THE DEPARTMENT.

**Date Mailed:**    MAY 0 2 2022

**Richard D. Russell, Manager Grievance
Section, Office of Legal Affairs**

cc: Warden, Filing Facility   MBP

(ECF No. 37-2, PageID.222-223, 225.)  Instead, prison officials seemed to construe the grievance as being against "the business office."[4]

---

[4]    Notably, the Step I response indicated that the money was withdrawn from Stubbs's account because it came from a tax refund, not a stimulus check.  But according to the Internal Revenue Service's website, individuals who did not receive their full Economic Impact Payments could obtain the payments by filing federal tax returns and claiming Recovery Rebate Credits. *2021 Recovery Rebate Credit — Topic C: Eligibility for claiming a Recovery Rebate Credit on a 2021 tax return*, https://www.irs.gov/newsroom/2021-recovery-rebate-credit-topic-c-eligibility-for-clai ming-a-recovery-rebate-credit-on-a-2021-tax-return (last visited March 27, 2024).

But despite these points of disagreement with Defendants, the undersigned agrees that the Step I form for grievance <u>MBP-22-03-525-01B</u> did not name Defendants.[5]  Furthermore, Stubbs's response and sur-reply to Defendants' motion, together with his grievance records, clarify that <u>his claim against Defendants is based on their participation in the grievance process</u>.

As noted above, Stubbs's complaint allegations were sparse.  He complained that the MDOC mishandled his funds, but his sole allegation against Defendants was that they "refused to acknowledge their own policy."  (ECF No. 1, PageID.4.)  Stubbs's grievance records show that Defendants reviewed or responded to grievance <u>MBP-22-03-525-01B</u> and its appeals.  (ECF No. 37-2, PageID.222-223, 225.)  And Stubbs's sur-reply[6] states: "The respondents to my grievances refused to properly investigate the actual claim, and handle the situation accordingly. . . . Each Defendant could've acted in accordance to their only authority given to them [sic] and settled this during the grievance process."  (ECF No. 55, PageID.318.)

---

That appears to be exactly what Stubbs did, leading the IRS to issue him a refund in the amount of $1,848.27.  (*See* ECF No. 1-1, 20.)  In other words, Stubbs's federal tax return *was* his (combined) Economic Impact Payment.  The individuals in control of Stubbs's finances nevertheless withheld all but $11.00 of Stubbs's return.  (ECF No. 1-1, PageID.19.)  With this in mind, the undersigned's recommendation is not intended to suggest that there was no mishandling of Stubbs's Economic Income Payment.

[5]      Though the undersigned acknowledges that Defendant McCarthy was the Business Office Supervisor, and again notes that the grievance referenced "prisoner accounting" and was construed as being against the "business office."

[6]      Stubbs filed the sur-reply without obtaining leave of court.  This Court's local civil rules do not permit a party to file a sur-reply unless permitted or required by the court.  *See* W.D. Mich. LCivR 7.2(c).  The undersigned recommends that the Court exercise its discretion and consider the sur-reply.

The additional clarity regarding Stubbs's claim presents two problems.  First, grievance <u>MBP-22-03-525-01B</u> could not have exhausted Stubbs's claim against Defendants where the complained-of conduct occurred *after* the Step I grievance was filed.  Second, and perhaps more significantly, Stubbs's complaint fails to state a claim upon which relief can be granted.

For a state actor to be held personally liable under § 1983, they must have been personally involved in the violation of the plaintiff's rights.  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005); *Bennett v. Schroeder*, 99 F. App'x 707, 713-714 (6th Cir. 2004).  In other words, claims against public officials in their personal capacity "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115, 119 S.Ct. 1763, 143 L.Ed.2d 793 (1999)).  An MDOC employee's participation in the grievance process is insufficient to establish personal involvement in the violation of a prisoner's federal statutory or constitutional rights. *Id*. at 300.

As to Stubbs's claims against Defendants in their official capacity, those claims are barred by the Eleventh Amendment.  A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio*

*Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989).  And Stubbs's request for relief includes only monetary damages.

Ultimately, this Court is required to dismiss this action "at any time" if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2); *see also* 42 U.S.C. § 1997e(c).  In the undersigned's opinion, Stubbs's complaint, sur-reply, and grievance records make it clear that Stubbs's claim against Defendants is based on their involvement with the grievance process, and Stubbs has therefore failed to state a claim against them in their personal capacity.  Furthermore, Defendants are entitled to sovereign immunity as to Stubbs's claim against them in their official capacity.[7]

## VI.  Recommendation

The undersigned respectfully recommends that the Court grant Defendant's motion for summary judgment based on Stubbs's failure to exhaust his administrative remedies.  Alternatively, the undersigned recommends that the Court dismiss this action in accordance with 28 U.S.C. §§ 1915(e)(2) and 42 U.S.C. §

---

[7]    The procedural history of this case creates some confusion as to whether Grievance Manager Richard D. Russell is a party to this case.  Stubbs certainly seemed to name Russell as a Defendant in his complaint, but Russell is not so listed in the docket.  (*See* ECF No. 1, PageID.2.)  Furthermore, when this Court issued its screening opinion it noted that Russell was "not a party."  (ECF No. 10, PageID.118.) And Stubbs did not object.  Regardless, the undersigned notes that even were Russell a defendant in this case, the undersigned would recommend that the Court dismiss Stubbs's claim against Russell for the same reason that the undersigned recommends the Court dismiss Stubbs's claim against Defendants.

1997e(c).  In the undersigned's opinion, Stubbs's grievance records and responses to Defendants' motion for summary judgment clarify that Stubbs's claim against Defendants is based on their involvement in the grievance process for grievance <u>MBP-22-03-525-01B</u>.  Because Defendants' conduct occurred after the grievance was filed, grievance <u>MBP-22-03-525-01B</u> could not have exhausted Stubbs's claim against Defendants.  Furthermore, mere participation in the grievance process does not establish personal involvement for the sake of claims brought under § 1983.  And Stubbs's official capacity claim against Defendants is barred by sovereign immunity.

If the Court accepts this recommendation based on exhaustion, this case will be dismissed without prejudice.  But if the Court accepts this recommendation based on Stubbs's failure to state a claim upon which relief can be granted, this case will be dismissed with prejudice.


Dated:  April 1, 2024                                   /s/ *Maarten Vermaat*
                                                       MAARTEN VERMAAT
                                                       U. S. MAGISTRATE JUDGE


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).